ORIGINAL

FILED

JUN 3 0 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1  Rodney J. Quigley
2  164 Valdivia Circle
3  San Ramon, CA 94583
   480-221-2800 voice
4  480-462-1951 fax
5  rod.quigley@gmail.com

6  **UNITED STATES DISTRICT COURT**
7  **NORTHERN DISTRICT OF CALIFORNIA**

8  QUIGLEY, individually and on

9  behalf of similarly situated

10 individuals, Plaintiffs,

11

12 v.

13 YELP INC.; THE WALT DISNEY

14 COMPANY; TWITTER, INC.;

15 MEDIA MATTERS FOR

16

17 AMERICA; DISQUS, INC.;

18 FACEBOOK, INC.;

19

20 WASHINGTON TIMES, LLC

21 AND DOES 1-9999, Defendants.

22 **JURY TRIAL DEMANDED**

23

24 **CLASS ACTION**

25

26

Case Number: C17- 3771
Before:

Hearing: Unset

**COMPLAINT FOR DAMAGES, INJUNCTION, CLASS ACTION AND JURY TRIAL DEMANDED FOR:**
1. **Violations of the Yelp Law [CA Civ.Cd. §§1790-1795.8] and Consumer Review Fairness Act of 2016 [Public Law No: 114-258 (12/14/2016)]**
2. **Violations of 42 USC §1983 [Infringement of civil rights by state actor]**
3. **Violations of 42 USC §1985 [Conspiracy to infringe civil rights**
4. **Violation of 26 USC §501(c)**

27 **INTRODUCTION**

27 1.  This case is a 1st amendment action couched in civil rights and

28 Complaint                          -1-                    Quigley v. Yelp et al
   June 27, 2017

consumer protection statutes.

2.   This case tests whether the media defendants are state actors with respect to the 1st and 4th amendment rights of their public internet users.

3.   This court will also decide if the citizens of the United States have enforceable rights to freedom of speech and privacy when communicating with other citizens via website telecommunications.

4.   The "color of law" in this case is found in the state enforcement of the various "terms of service" of the defendants.

## JURISDICTION

5.   As a single civil case, this court has jurisdiction to hear the matter under 28 USC §1332 because all defendants are diverse from the plaintiff and the amount in controversy is more than $75,000.

   a. Violations of the Yelp law carry statutory penalties of $2,500 for a first violation, $5,000 for subsequent violations and $10,000 for willful violations.

   b. Defendants in this case violated the Yelp law willfully and the maximum Yelp penalty should be assessed for every day the violations continue.

   c. Accordingly, the defendants collectively committed more than 8 willful violations of the Yelp Law.

6.   In addition, should class action certification be achieved in this matter, the court would have jurisdiction under 28 USC §1332(d)(2) because the class amount in controversy is greater than $5 million, there

Complaint
June 27, 2017
-2-
Quigley v. Yelp et al

are more than 100 class members and questions common to the class arise under the individual case.

**7.** Also, federal question jurisdiction under 28 USC §1331 vests in this case because of the civil rights violations pleaded herein.

**8.** Ancillary, pendent and supplemental jurisdiction vests for any non-federal matter that appears herein under 28 USC §1367.

**9.** Personal jurisdiction and venue is correct in this matter because the corporate defendants are generally present and do business in the Northern District of California including the area served by the San Francisco and Oakland Divisions of this court.

**10.** The natural person defendants inserted themselves into Northern District by their conduct on the Internet that reached into this district.

## PARTIES

**11.** Plaintiff Rodney J. Quigley is over 18 years of age and is a natural person resident and citizen of San Ramon, CA.

**12.** Defendant Yelp, Inc. ["Yelp"] is a Delaware corporation with headquarters and principal office in San Francisco, CA.

    a. Yelp is registered as a foreign stock corporation with the California Secretary of State under document number C2677032.

    b. Yelp's revenue for 2016 was reported at about $713 million.

    c. Yelp books $138 million in research and $480 million in administrative costs generating a small annual loss.

Complaint
June 27, 2017
-3-
Quigley v. Yelp et al

1

2

      d. Yelp maintains a website at:

         https://www.yelp.com/

3

4

**13.** Defendant Walt Disney Company [hereinafter referred to as

"ABC"] is a Delaware corporation with headquarters and principal

5

6

office in Burbank, CA.

7

      a. ABC is registered as a foreign stock corporation with the

8

         California Secretary of State under document number

9

         C1770422.

10

      b. ABC publishes and owns ABC News.

11

12

      c. ABC 2016 revenue is estimated at $55.6 billion.

13

      d. ABC 2016 profit is $9.3 billion.

14

      e. ABC News maintains a website surprisingly called

15

         http://abcnews.go.com/

16

      f. On that website, ABC publishes news articles and solicits

17

18

         commentary and user communications using the Disqus

         Commentary Engine ["DCE"].

19

20

**14.** Twitter, Inc. ["Twitter"] is a Delaware corporation with principal

21

office in San Francisco, CA.

22

      a. Twitter is registered with the California Secretary of State as

23

         a foreign corporation under document number C3006676.

24

      b. Twitter facilitates electronic communications among its

25

26

         users.

27

      c. Twitter's communications traffic involve user to user [or

28

users] conversations.

    d. Twitter maintains its website at:

      https://twitter.com/

**15.** Defendant Media Matters for America ["MM"] is a Kansas non-profit corporation organized under 26 USC §501(c)(3).  MM is headquartered in Washington, DC.

    a. MM alleges that it performs media research.

    b. Actually, MM publishes sensational, tabloid-style liberal news articles and solicits commentary on those articles through the DCE.

    c. MM is registered as a foreign non-profit corporation with the California Secretary of State under document number C3057385.

    d. MM maintains a website at:

      https://www.mediamatters.org

**16.** Disqus, Inc. ["Disqus"] is a Delaware corporation with principal office in San Francisco, CA.

    a. Disqus is registered as a foreign stock corporation with the California Secretary of State under document number C3085506.

    b. The Disqus Commentary Engine [again, "DCE"] facilitates user to user [or users] conversations and communications.

    c. DCE is used by some defendants herein as a service.

d. As part of that service, DCE provides clients with the capability to surreptitiously surveil ongoing user communications.

    i. That is a wiretap in anyone's definition including our glorious president and all of his detractors.

    ii. It is also a violation of the CA Pen.Cd. §632 which require both parties to a conversation to be informed of on-going surveillance.

e. Should a Disqus client [like say, MM] detect what the client deems [in the sole judgment of the client] to be objectionable speech occurring among private users within the DCE, the client may order Disqus to banish or suspend that user from the DCE, effectively silencing that user's political speech.

f. Disqus executes all client orders to banish users without question, review or appeal.

g. Disqus is an alter ego, agent and privity of its clients herein including ABC, MM, Washington Times and DOES 1-3.

h. However, Disqus maintains a separate web presence at: https://disqus.com/home/

**17.** Facebook, Inc. ["Facebook"] is a Delaware corporation with principal office in Menlo Park, CA.

a. Facebook is registered as a foreign stock corporation with the California Secretary of State under document number

1      C2711108.

2      b. Facebook maintains its website at:

3         https://www.facebook.com/

4

5   **18.** Washington Times, LLC is a Washington DC corporation with

6   principal office in Washington DC.

7      a. Washington Times, LLC maintains a website located at:

8         http://www.washingtontimes.com/

9      b. Washington Times, LLC utilizes Disqus DCE for its news

10        commentary system.

11

12  **19.** DOE 1 is a natural person that is not a citizen or resident of

13  California.

14     a. DOE 1's screen name on Disqus is "PrecipitousDrop".

15     b. DOE 1's actual identity and location is known to Disqus.

16     c. DOE 1 is designated here as a person who participated in a

17        conspiracy to abridge my 1st Amendment rights on MM

18        through the DCE.

19

20  **20.** DOE 2 is a natural person whose screen name on Twitter is "Derek

21  Kreiner".

22     a. DOE 2 could be "Derek A. Kreiner", a citizen of Maryland

23        over the age of 18.

24     b. DOE 2's actual identity and location are known to Twitter.

25     c. DOE 2 is designated here as a person that participated in a

26        conspiracy to abridge my 1st Amendment rights on Twitter.

27

28  Complaint                          -7-                    Quigley v. Yelp et al
    June 27, 2017

**21.** DOE 3 is a natural person whose name, location and capacity are currently not known to me.

    a. DOE 3 could be "David Caplan", a citizen of New York over the age of 18.

    b. DOE 3's actual identity and location are known to ABC.

    c. DOE 3 is designated here as a person that participated in a conspiracy to abridge my 1st Amendment rights on ABC News DCE.

**22.** The identities and capacities of DOES 4-9999 are not known to me at this time.

## FACTS AND LAW

**23.** The baseline facts with respect to censorship in this case are not in dispute, nor can those facts be disputed.

**24.** Between April 10, 2017 and May 30, 2017 [with the exception of Yelp] every corporate defendant in this case engaged in at least one act of surreptitious surveillance and at least one act of overt censorship against me personally in violation of my rights under the 1st and 4th amendments.

    a. Yelp committed many acts of overt censorship against me over the same period of time, but as far as I know, did not engage in surreptitious surveillance of me during this period.

    b. However, Yelp did engage in many acts of surveillance against me in times previous to April 10, 2017.

**25.** Additionally, Defendants Yelp, ABC, Facebook and Media Matters are present here because each banned me from their websites in response to derogatory political opinions that I expressed openly about each of these defendants either on the defendants website or on the DCE.

**26.** All defendants are subject to injunctive relief this court might issue.

**27.** But damages are pleaded against Yelp, ABC, Facebook and Media Matters because of each of these defendants willfully violated the Yelp Law and CRFA.

**28.** The act of posting derogatory opinions of a consumer or user against "vendors" is explicitly protected by the Yelp Law and CRFA, especially on an opinion board like the DCE, and yes, it is indeed ironic that Yelp did not hesitate to violate the Yelp Law when Yelp itself was the target of derogatory speech.

### Toss the TOS

**29.** The defendants in this case will not deny surveilling and censoring me because each corporate defendant feels justified committing these acts pursuant the defendants' respective "terms of service".  ["TOS"].

   a. A website's TOS is like a warm and fuzzy gift to oneself. TOS are self-servingly drafted by the defendants' to grant extraordinary benefits to the defendants and the website.

   b. But under current law, a TOS cannot abrogate user constitutional rights under the 1st or 4th amendments.

   c. The Consumer Review Fairness Act ["CRFA"] enjoins and renders unenforceable any TOS that violates a user's constitutional rights.

   d. Likewise, the Yelp Law protects consumer rights of free speech by nullifying any anti-disparagement clause in contracts.

   e. Both laws were enacted to protect user free speech rights.

   f. By extension, this case also tests whether 4th amendment privacy rights are also explicitly protected by either the Yelp Law or CFRA.

   g. I propose that any provision in a TOS, or any self-serving "interpretation" of a provision in a TOS that is used to banish, surveil or censor users are null, void and illegal.

## State Actors

**30.** To enforce constitutional rights against private parties, this court must find that the defendants are state actors.

**31.** At the center of the state actor argument for all corporate defendants is the Internet.

   a. The Internet was created and financed by the federal government.

   b. The Internet is regulated by the federal government.

   c. No corporate defendant herein could exist without the Internet and the federal government.

Complaint
June 27, 2017
-10-
Quigley v. Yelp et al

d. Hence all corporate defendants are totally dependent on the federal government and that dependency creates grounds for classifying these corporate defendants as "state actors".

## Surveillance and Censorship Are Illegal

**32.** Additionally, no corporate defendant can legally surveil or censor user to user communications.

a. User communications are protected by federal and state statutes regulating telecommunications.

b. Behavior that violates constitutional rights of users is strictly forbidden.

c. Here, by using the services provided by the DCE or by internally developed equivalent capabilities, Twitter, Yelp, MM, Washington Times and Facebook all function as telecom companies providing communications between and among users.  Hence, these companies are subject to statutes that protect consumers from internet "robber barons".

d. No corporate defendant can show a legitimate or legal right to surveil or censor user conversation.

e. No term within any TOS can abrogate constitutional rights [See the CRFA and Yelp Law].

f. No other right or need exists for corporate defendants [outside of the TOS] that would permit surreptitious surveillance or censorship of user to user communications.

### The Fiction of the Safe Place

**33.** Some defendants invoke terms in the TOS that gives the website surveillance and censorship powers over users as a means of providing a "safe environment" for some "special" user class [defined any way the website deems] at the expense of free speech rights of other, less favored user classes.

**34.** The "safe environment" argument is bogus. Every website in this case [as well as the DCE] has the capability for any individual user in any class of user to block any other user. **[This is referred to as the "block button"]**

**35.** Users have a right to speak to each other, but users also have individual rights <u>not to listen</u> to any other user **at the individual user's discretion.**

**36.** Accordingly, the right to speak or listen is vested in the users, and not ever in the website.

**37.** Hence, **this case asserts that the "block button" is the only constitutionally permissible "safe place"** for user communications when any user objects to the speech of another user.

**38.** Specifically, it is never constitutionally permissible for third parties like these defendants to wiretap user communications or censor users under TOS terms or any other rubric.

### Color of State Law

**39.** Additionally, to hold the defendants liable, the court must find that

a state actor must have committed a prohibited act under "color of state law".

    a. Here, the prohibited acts are surreptitious surveillance and censorship, defendant violations of 1st and 4th amendment user rights.

    b. The each defendant's TOS is an instrument created under and enforced by state law.

    c. "Color of state law" is achieved when defendants invoke the TOS to justify wholesale violations of user constitutional rights.

    d. In every instance presented here, the defendants will whine about their "rights" with respect to user traffic on their internal servers, but will conveniently forget the federal internet telecommunications facilities that allow the internet robber barons to exist.

## Yelp Banned Me

**40.** In November 2015, after some lengthy surreptitious surveillance, Yelp completely banned me from the Yelp website.

**41.** Yelp justified this act by citing a term in the Yelp TOS that enjoined "commercial activity" by users.

**42.** The evil activity that I was engaged was mediating Yelp user disputes with businesses that had been given derogatory reviews by Yelp users.

**43.** I communicated clearly and personally to Yelp that my mediation activities were "non-profit".

**44.** Yelp stubbornly insisted over the top of my protests that my mediation activities were "commercial" and therefore violated Yelp TOS with, of course Yelp acting as judge, jury and executioner [aka, "Lord of the TOS"] regarding interpretation and application of Yelp TOS provisions.

**45.** So what was the real reason that Yelp banned me from the website?

    a. The court will please take notice of the numerous extortion claims filed by Yelp businesses and shareholders. http://nypost.com/2014/10/13/restaurant-fights-yelps-alleged-extortion/

    b. In short, Yelp's adversaries claim Yelp's business model is to manipulate consumer ratings based on whether a business paid for advertising on Yelp.

    c. If a business refused to pay for Yelp advertising, adverse reviews would be elevated and positive reviews would disappear from Yelp consumer ratings under guise of the Yelp fraudulent relevance engine.

    d. The opposite would occur for a paid Yelp advertiser.

    *e.* Somehow, a panel in the 9th circuit found this extortionate practice to be legal.

f. Perhaps that esteemed court did not realize *whose communications are being manipulated for Yelp's profit motives?*

g. Above all else, mediation is constitutionally permissible communication between and among US citizens on Yelp's telecommunications facility.

h. Within Yelp's messaging system, Yelp surveillance personnel could see that I was highly critical of Yelp to businesses.

i. Yelp's extortionate practices have been known publically for some time.

j. Yelp has no legal right [except for what Yelp believes to exist in Yelp's TOS] to interfere, alter, minimize or maximize user communications contained in consumer ratings.

k. Nor does Yelp have a right to censor any user's opinions, especially the ones that Yelp deems derogatory to Yelp.

l. My mediation process eliminated Yelp's extortion scheme:

    i. First, mediation exposed fraudulent reviews, some of which appeared to be sponsored and promulgated by Yelp marketing.

    ii. Some alleged reviewers never actually patronized the businesses they reviewed.

     iii.  Second, in my mediation systems, legitimate aggrieved reviewers were compensated with either refunds or other compensatory relief from the business.

     iv.  But mediation did not fit with Yelp's agenda of business extortion [or "non-extortion" extortion, if anyone in this century still believes in the 9th circuit] perpetual conflict between business and consumers and extortionate ad sales to business.

  m. Yelp also believed that the mediation process disparaged Yelp, and I did express derogatory opinions about Yelp when approaching reviewed business.

  n. In all, I have experienced more than 500 days of banishment from Yelp and Yelp's banishment of me was willful.

**ABC News**

**46.** On April 10, 2017 I was banned from the ABC News' DCE maintained by Disqus.

**47.** My grievous sin against ABC was to comment on the DCE about an ABC News story authored by David Caplan, an ABC employee who appears here as DOE 3.

**48.** The story claimed that "300 protesters" opposed US Rep. Devin Nunes during his visit to Fresno, CA.

**49.** However, the photograph beneath the headline did not support Mr. Caplan's counting skills.  To me, it looked more like 30 protesters.

**50.** So while on the ABC News' DCE, I called out Caplan and ABC News as **"Fake"** for reporting an absurdly inflated number of protesters.

**51.** Apparently ABC and David Caplan took great umbrage at being exposed as "Fake News" and "Fake Journalists" and "mathematically deficient".

**52.** ABC called Disqus and ordered me banished from ABC News' DCE.

**53.** Disqus implemented the ban, and I have been excluded from ABC News' DCE for more than 30 days.

**54.** My exclusion by ABC from the ABC News' DCE was willful.

### Facebook

**55.** On or about May 27, 2017 my personal Facebook account "4802212800" was banned from Facebook.

**56.** Facebook appeared upset with my personal communication with various alt-right Facebook groups and people that Mark Zuckerberg believes to be unsavory and "deplorable".

**57.** However, Facebook does not wish to be exposed engaging in either overt political censorship and repression or in surreptitiously surveilling Facebook user communications.

    a. Such fascist conduct would make Facebook look the "Big Brother" of this era and a tool of the Globalist Left.

**58.** So out comes the handy, good for all occasions and situations, Facebook serf-serving, self-drafted TOS where Facebook claims the

right for itself to unilaterally suspend my account without warning or recourse.

**59.** After all, I could be a terrorist and Facebook is merely maintaining a safe place for its preferred users..

**60.** Facebook's ban was a willful violation of the CRFA and the Yelp Law and impermissible abridgment of my freedom of speech.

## RELIEF REQUESTED

### Count 1: Violations of the Yelp Law [CA Civ.Cd. §§1790-1795.8] and Consumer Review Fairness Act of 2016 [Public Law No: 114-258 (12/14/2016)]
### Lodged Against Defendants Yelp, MM, Facebook and ABC

**61.** Plaintiff and class members re-allege ¶¶1-60.

**62.** Plaintiff prays for damages and injunction from:

Yelp

**63.** In November 2015 I expressed derogatory opinions about the Yelp extortion cases to Yelp users over the Yelp user-to-user messaging system.

**64.** Frequently on the Yelp messaging system I would make these and other comments on the Yelp messaging system that Yelp construed to be derogatory.

**65.** Yelp's surveillance employees detected my derogatory speech.

**66.** Yelp then launched an "investigation" into my private communications to other users over the website.

**67.** Yelp could see from my Yelp messaging that I was attempting to

mediate derogatory reviews of business with aggrieved customers.

**68.** Yelp disingenuously declared that my speech was "commercial".

    a. This label delicately sidestepped the Yelp law.

    b. Yelp hypocritically labeled my speech as "commercial" rather than "derogatory" to avoid the Yelp Law.

    c. Once Yelp decided for itself the "true nature" of my speech, Yelp then became self-entitled to exclude me from the website on the basis of Yelp TOS.

**69.** Mediation speech and derogatory speech are both protected by the Yelp Law, and TOS cannot be construed to limit free speech or privacy under the CRFA.

**70.** I request statutory damages in the amount of $5,000,000 for 500 days of wrongful exclusion from Yelp.

ABC

**71.** On April 10, 2017, ABC excluded me from the ABC News DCE.

**72.** The official reason for my exclusion from ABC News site was the ABC TOS where ABC granted itself unlimited discretion to create a "safe place" for users, which of course, to ABC, means the liberal ones.

**73.** ABC did not like being called "**Fake**" for their faked news report regarding of the number of paid liberal protestors at Devin Nunes' Fresno town hall meeting.

**74.** Hence, to promote "safety" for liberals, eliminate evil alt-right triggering speech and limit ABC's audience to moronic Beta males and

1  their handlers, ABC ordered my ejection from ABC News DCE.

2  **75.** I have been banned from ABC News DCE for more than 30 days.

3  I therefore request statutory damages in the amount of $300,000.

4

5                                MM

6  **76.** On or about May 16, 2017, MM excluded me from the MM DCE.

7  **77.** The official reason for my exclusion from MM News site was the

8  MM TOS where MM granted itself unlimited discretion to create a "safe

9  place" for MM users, which of course, to MM, means the liberal ones.

10  **78.** MM did not like my continuous references to the Seth Rich murder

11  where I laid responsibility for that murder at the feet of the DNC, HRC,

12  Podesta, SEIU and DWS [aka, the "Crats"].

13

14  **79.** In my references I insisted that MM was "**Fake News**" for failing

15  to deal with clear alternate news reports that DNC and DWS had

16  explicitly threatened Metropolitan Police Department if that department

17  proceeded to actually investigate the Seth Rich murder.

18

19  **80.** Additionally, I kept citing facts that implicated the Crats in the

20  murder, then opined on the DCE why main stream media including MM

21  had missed the story.

22  **81.** Hence, to promote "safety" for liberals, eliminate evil alt-right

23  triggering speech and limit MM's audience to moronic Beta males and

24  their handlers, MM ordered my ejection from MM DCE.

25

26  **82.** I have been banned from MM DCE for more than 30 days.

27  **83.** I therefore request statutory damages in the amount of $300,000.

28  Complaint                          -20-                    Quigley v. Yelp et al
    June 27, 2017

Facebook

**84.** On or about May 27, 2017 I contacted and communicated with

various members alt-right groups using the Facebook messaging system

**85.** Some of these communications involved my expressing derogatory

opinions about Facebook to other Facebook users over the Facebook

user-to-user messaging system.

**86.** Facebook surveillance employees detected my derogatory speech.

**87.** Facebook disingenuously declared that my account was

"suspicious" and that my identity was in doubt after 8 years of

continuous membership with Facebook.

**88.** Thus Facebook using its own tortured interpretation of facts and

TOS [while employing a fairly large shoehorn] concluded that Facebook

was entitled to suspend my account and eject me from the website

without notice, investigation or cause solely because I was "suspicious".

**89.** Derogatory speech is protected by the Yelp Law and no TOS can

be construed to limit free speech rights or privacy rights under the

CRFA.  This includes "suspicious" accounts subject to the block button.

**90.** I request statutory damages in the amount of $300,000 for 30 days

of wrongful intentional exclusion from Facebook.

### Count 2:  Violations of 42 USC §1983
### [Infringement of civil rights by state actor]
### Lodged against all corporate defendants.

**91.** Plaintiff and class members re-allege ¶¶1-90.

**92.** All defendants violated my 1st and 4th amendment rights to private

communications and free speech.

**93.** All corporate defendants are state actors.

**94.** All defendants used their respective TOS as the legal reason to surveil, censor and eject me.

**95.** TOS are supported by state law.

**96.** The defendants abridged my constitutional rights under color of state law by reference to TOS.

**97.** I request temporary restraining order, preliminary injunction and permanent injunction ordering all defendants to cease surreptitious surveillance and desist from ejecting any other user for any reason.

### Count 3:  Violations of 42 USC §1985(3)
### [Conspiracy to infringe civil rights
### Lodged against all defendants.

**98.** Plaintiff and class members re-allege ¶¶1-97.

**99.** All defendants violated my 1st and 4th amendment rights to private communications and free speech.

**100.**    All defendants worked with other likeminded users on their websites to eject "wrongthinkers" [meaning conservatives, of course] from their websites

**101.**    All corporate defendants are state actors.

**102.**    All corporate defendants used their respective TOS as the legal reason to surveil and censor me.

**103.**    TOS are enforceable by state law.

**104.**    Hence the defendants abridged my constitutional rights under

color of state law by reference to TOS.

**105.** I request temporary restraining order, preliminary injunction and permanent injunction ordering all defendants to cease surreptitious surveillance and desist from ejecting any user for any reason.

**Count 4: Violations of 26 USC §501(c)(3)**
**[Failure to Comply with Requirements for Tax Free Status]**
**Lodged against Media Matters for America.**

**106.** Plaintiff and class members re-allege ¶¶1-105.

**107.** Media Matters is registered with Internal Revenue as a "501(c)(3)" organization allowing MM tax free status and donor tax deductibility for donations given to MM.

**108.** One provision of 501(c)(3) requires no partisan political activities by the organization to maintain its tax free status.

**109.** But Media Matters for America has always engaged in partisan activities perverting news to support the DNC and its candidates, and denigrating RNC candidates while masquerading as a journalistic research organization.

    a. The only research MM seems to conduct is the limitations of the gullibility of the liberal base, eg ghost "Russians" in the election!

    b. All MM stories are delusional partisan hit-pieces.

**110.** I request an order from this court requiring Internal Revenue to revoke MM's 501(c)(3) status and re-determine MM's tax liability for the three previous tax years.

1

## Other Relief

2

**111.**     Plaintiff and class members request order certifying the

3

proposed class and designating plaintiff as class representative with class

4

counsel to be designated at a future date.

5

6

**112.**     Plaintiff and class members request order granting pre and

7

post-judgment interest in amounts permitted by law.

8

**113.**     Plaintiff and class members request attorney fees and costs of

9

suit in amounts permitted by law.

10

**114.**     Plaintiff and class members request trial by jury on all claims

11

so justiciable.

12

June 27, 2017

13

14

Rodney J. Quigley

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint                                    -24-                    Quigley v. Yelp et al
June 27, 2017