KEKER, VAN NEST & PETERS LLP
PAVEN MALHOTRA - # 258429
pmalhotra@keker.com
JAY RAPAPORT - # 281964
jrapaport@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RODNEY J. QUIGLEY, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>YELP, INC.; THE WALT DISNEY COMPANY; TWITTER, INC.; MEDIA MATTERS FOR AMERICA; DISQUS, INC.; FACEBOOK, INC.; PAYPAL HOLDINGS, INC.; and DOES 1-9999,<br><br>Defendants. | Case No. 3:17-cv-03771-RS<br><br>**DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) AND STRIKE CLASS ALLEGATIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(F); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          October 26, 2017<br>Time:          1:30 p.m.<br>Dept.:         Courtroom 3, 17th Floor<br>Judge:         Hon. Richard Seeborg<br><br>Date Filed:  June 30, 2017<br><br>Trial Date:  None Set |

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

1186664

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...............................................................................................1

II.   STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ...................2

    A.   Plaintiff's acceptance of Facebook's terms of service and privacy policies. ..........2

    B.   The suspension of Plaintiff's Facebook account. ....................................................3

    C.   This litigation. ........................................................................................................3

III.   ARGUMENT ...................................................................................................4

    A.   Plaintiff fails to state a cognizable claim against Facebook. ..................................4

        1.   Plaintiffs' claims against Facebook—under any theory—fail because he has failed to allege either censorship or surveillance. ...............5

        2.   Because all Defendants are private parties, Plaintiff has no claim for violation of his constitutional rights or conspiracy to deprive him of those rights. ............................................................................................6

        3.   The Consumer Review Fairness Act and Yelp Law do not apply to the suspension of Facebook's account, and the Communications Decency Act immunizes Facebook for that suspension. ............................8

        4.   Plaintiff's Wiretap Act claims fail for multiple reasons. ..........................13

        5.   Plaintiff's California Invasion of Privacy Act claims fail for most of the same reasons as his Wiretap Act claims and because the alleged communications were not confidential. ......................................................15

        6.   Plaintiff's claims under the California Comprehensive Computer Data Access and Fraud Act fail for multiple reasons. ...............................17

        7.   Plaintiff's fraud claims fail because the statutes on which he relies do not provide a private right of action and because suspension of his account did not defraud him of anything. .............................................18

        8.   Dismissal with prejudice is warranted. ....................................................19

    B.   This case cannot proceed as a class action..............................................................19

IV.   CONCLUSION.................................................................................................20

i

1186664

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................................................ 4, 6, 15

*Balistreri v. Pacifica Police Dep't*
901 F.2d 696 (9th Cir. 1990) .............................................................................. 4

*Barnes v. Yahoo!, Inc.*
570 F.3d 1096 (9th Cir. 2009) ......................................................................... 11

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .......................................................................................... 8

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*
403 U.S. 388 (1971) .......................................................................................... 6

*Carafano v. Metrosplash.com, Inc.*
339 F.3d 1119 (9th Cir. 2003) ......................................................................... 10

*Cervantes v. Countrywide Home Loans, Inc.*
656 F.3d 1034 (9th Cir. 2011) ......................................................................... 19

*Claridge v. RockYou, Inc.*
785 F. Supp. 2d 855 (N.D. Cal. 2011) ............................................................... 9

*Daly-Murphy v. Winston*
837 F.2d 348 (9th Cir. 1987) ............................................................................ 6

*e360Insight, LLC v. Comcast Corp.*
546 F. Supp. 2d 605 (N.D. Ill. 2008) ............................................................... 12

*Facebook, Inc. v. Profile Tech., Ltd*
No. 5:13-CV-00459-PSG, 2013 WL 3815886 (N.D. Cal. July 22, 2013) ............................ 15

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*
521 F.3d 1157 (9th Cir. 2008) ......................................................................... 10

*Forbes v. Facebook, Inc.*
No. 16 CV 404 (AMD), 2016 WL 676396 (E.D.N.Y. Feb. 18, 2016) ...................................... 7

*Green v. Am. Online (AOL)*
318 F.3d 465 (3d Cir. 2003) ............................................................................ 11

*Hacker v. Hacker*
No. 1:15-cv-01258 JAM MJS, 2015 WL 8780561 (E.D. Cal. Dec. 15, 2015), *report
and recommendation adopted*, No. 1:15-cv-01258-DAD-MSJ, 2016 WL 4254108
(E.D. Cal. Aug. 12, 2016) ................................................................................ 18

*Holomaxx Techs. v. Microsoft Corp.*
783 F. Supp. 2d 1097 (N.D. Cal. 2011) ............................................................. 13

ii

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

1186664

*Holomaxx Techs. v. Yahoo!, Inc.*
No. CV-10-4926, 2011 WL 865794 (N.D. Cal. Mar. 11, 2011)......................................... 12, 13

*Horn v. Foulk*
No. C 08-2419, 2008 WL 4457683 (N.D. Cal. Sept. 29, 2008) ............................................ 20

*In re Carrier IQ, Inc.*
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................................ 17

*In re Facebook Privacy Litig.*
791 F. Supp. 2d 705 (N.D. Cal. 2011) ............................................................................... 9, 17

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*
806 F.3d 125 (3d Cir. 2015).................................................................................................. 9

*In re Google Inc. Gmail Litig.*
No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013).............................. 16

*Jackson v. Metro. Edison Co.*
419 U.S. 345 (1974).............................................................................................................. 7

*Johnson v. Hewlett-Packard Co.*
No. 09-3596, 2010 WL 2680772 (N.D. Cal. July 6, 2010) .................................................. 20

*Knievel v. ESPN*
393 F.3d 1068 (9th Cir. 2005) ............................................................................................. 4

*Konop v. Hawaiian Airlines, Inc.*
302 F.3d 868 (9th Cir. 2002) ............................................................................................... 13

*Mortensen v. Bresnan Commc'n, L.L.C.*
No. CV 10-13-BLG-RFC, 2010 WL 5140454 (D. Mont. Dec. 13, 2010)............................. 15

*Opperman v. Path, Inc.*
87 F. Supp. 3d 1018 (N.D. Cal. 2015) ................................................................................ 17

*Pagan v. Google Corp.*
No. 16-CV-401-JD, 2016 WL 7187645 (D.N.H. Nov. 15, 2016), *report and
recommendation adopted*, No. 16-CV-401-JD, 2016 WL 7187312 (D.N.H. Dec. 8,
2016) ...................................................................................................................................... 7

*Riggs v. MySpace, Inc.*
444 F. App'x 986 (9th Cir. 2011) ........................................................................................ 11

*Russell v. United States*
308 F.2d 78 (9th Cir. 1962) ................................................................................................. 20

*Sanders v. Apple, Inc.*
672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................................ 20

*Saponaro v. Grindr, LLC*
93 F. Supp. 3d 319 (D.N.J. 2015) ....................................................................................... 11

*Scharf v. United States Att'y Gen.*
597 F.2d 1240 (9th Cir. 1979) ............................................................................................. 16

iii

1186664

*Shwarz v. United States*
   234 F.3d 428 (9th Cir. 2000) ........................................................................... 4

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) ...................................................... 11, 12

*Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*
   No. 09-4567, 2011 WL 900096 (D.N.J. Mar. 15, 2011) ....................................... 12

*Sunbelt Rentals, Inc. v. Victor*
   43 F. Supp. 3d 1026 (N.D. Cal. 2014) ............................................................ 13

*United States v. Torres*
   188 F. Supp. 2d 155 (D.P.R. 2002)................................................................ 16

*Waterhouse v. CUFI Church Ass'n Inc.*
   No. 14-00144 SOM-KSC, 2014 WL 2938396 (D. Haw. June 27, 2014)................................. 7

*Windham v. Davies*
   No. 1:14-CV-01651-LJO, 2015 WL 461628 (E.D. Cal. Feb. 3, 2015) ............................... 19

*Young v. Facebook, Inc.*
   No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ........................... 6

**State Cases**

*Am. Airlines, Inc. v. Cty. of San Mateo*
   12 Cal. 4th 1110 (1996) ............................................................................ 9

**Federal Statutes**

15 U.S.C. § 45b(a)(3)(A)(i) ........................................................................... 10

15 U.S.C. § 45b(d) .................................................................................... 10

15 U.S.C. § 45b(e) .................................................................................... 10

18 U.S.C. § 1343 ...................................................................................... 18

18 U.S.C. § 2510(4) ................................................................................... 14

18 U.S.C. § 2511(1) ................................................................................... 15

18 U.S.C. § 2511(1)(a) ................................................................................ 13

18 U.S.C. § 2511(1)(c) ................................................................................ 15

18 U.S.C. § 2511(1)(d) ............................................................................. 13, 15

18 U.S.C. § 2511(1)(e) ................................................................................ 13

18 U.S.C. § 2511(2)(d) ............................................................................. 14, 15

42 U.S.C. § 1983 ....................................................................................... 6

iv

1186664

42 U.S.C. § 1985(3) ........................................................................................................ 6

47 U.S.C. § 230(c)(1) ...................................................................................................... 10

47 U.S.C. § 230(c)(2)(A) ................................................................................................ 12

47 U.S.C. § 230(f)(2) ...................................................................................................... 10

47 U.S.C. § 230(f)(3) ...................................................................................................... 11

**State Statutes**

Cal. Civ. Code § 1670.8(a) ............................................................................................... 9

Cal. Civ. Code § 1670.8(a)(1) ........................................................................................... 9

Cal. Civ. Code § 1770(a) .................................................................................................. 9

Cal. Civ. Code §§ 1790-1795.8 ........................................................................................ 9

Cal. Penal Code § 484 .................................................................................................... 18

Cal. Penal Code § 502(b)(10) ........................................................................................ 17

Cal. Penal Code § 502(c) ............................................................................................... 17

Cal. Penal Code § 502(c)(1) ........................................................................................... 18

Cal. Penal Code § 502(c)(2) ........................................................................................... 18

Cal. Penal Code § 502(c)(4) ........................................................................................... 18

Cal. Penal Code § 502(c)(5) ........................................................................................... 18

Cal. Penal Code § 631 .................................................................................................... 15

Cal. Penal Code § 631(a) ............................................................................................... 16

Cal. Penal Code § 632 .................................................................................................... 15

Cal. Penal Code § 632(a) ............................................................................................... 16

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 4

Fed. R. Civ. P. 12(f) ....................................................................................................... 20

Fed. R. Civ. P. 23(a)(4) .................................................................................................. 20

v

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

1186664

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 26, 2017, at 1:30 p.m., or as soon thereafter as this matter may be heard before the Honorable Richard Seeborg, Courtroom 3, 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Facebook, Inc. ("Facebook") and will and hereby does move this Court to dismiss the claims filed against it by Plaintiff Rodney J. Quigley under Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff fails to state a claim upon which relief can be granted.  Facebook also will and hereby does move to strike Plaintiff's class allegations under Federal Rule of Civil Procedure 12(f) on the ground that this matter cannot proceed as a class action.  This motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities in support thereof; the Declaration of Michael Duffey; the complete files and records in this action; the arguments of counsel; and such other evidence as may be allowed at the hearing of this motion.

Dated:  September 5, 2017                                    KEKER, VAN NEST & PETERS LLP


                                                 By:    _/s/ Paven Malhotra_
                                                        PAVEN MALHOTRA
                                                        JAY RAPAPORT

                                                        Attorneys for Defendant
                                                        FACEBOOK, INC.

1186664

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff claims that Defendant Facebook, Inc. ("Facebook") "banned" the personal Facebook account linked to his mobile phone based upon the views he expressed to members of the "alt-right" through Facebook's messaging system.  Facebook did nothing of the sort.  It did not ban his account.  And it certainly did not target him for his political leanings.  While a court ordinarily accepts any well-pleaded allegations as true for purposes of a motion to dismiss, Plaintiff himself has submitted evidence that rebuts his own allegations.  Plaintiff acknowledges that Facebook said it suspended his account for identity-protection reasons, and his submissions show that Facebook offered to restore access if Plaintiff simply confirmed his identity.  He refused to do so and continues to refuse to do so.  Plaintiff alone is responsible for his inability to access his account.

But even if this Court overlooks the evidence that Plaintiff has submitted and accepts his allegations, they still are insufficient to state a claim.  All the defects that Facebook pointed out in its first motion to dismiss are still present.  Plaintiff's constitutional claims do not apply to private entities, his consumer-protection claims do not apply to free online services, and his theories of online censorship run headlong into the broad immunity of the Communications Decency Act.  Plaintiff's First Amended Complaint ("FAC") does nothing to address these problems.

Worse still, the FAC expands the case to include at least six new counts based on alleged wiretapping, electronic eavesdropping, computer hacking, and fraud—all of which fail for multiple reasons.  To give just a few:

- Plaintiff has no claim for wiretapping because he has not alleged that Facebook intercepted communications he sent through Facebook and because he consented to any alleged interception of communications.

- Plaintiff's eavesdropping claim fails because he had no expectation that recipients of his Facebook messages would keep those messages private.

1186664

- Plaintiff's computer hacking claims ignore either his own allegations or the text of the statute he cites.

- Plaintiff's fraud claims rely on criminal laws that do not authorize a civil action.

Enough is enough.  With every filing—the original Complaint, the *ex parte* application for a temporary restraining order, and now the FAC—Plaintiff has offered only indefensible legal theories and implausible speculation.  He cannot state a meritorious claim; all he can do is impose further needless costs on the parties and the Court.  His claims should be dismissed with prejudice.

## II.     STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

### A.     Plaintiff's acceptance of Facebook's terms of service and privacy policies.

Facebook is a free-to-use, online social media platform through which individual users, including Plaintiff, communicate with one another via the Internet.  FAC ¶¶ 38(c), 110; Declaration of Michael Duffey ("Duffey Decl."), ¶ 2; *see generally id.* Exh. A (requiring no payment as condition of using Facebook).  Plaintiff had a personal Facebook account he calls "4802212800," which corresponds to his phone number.  FAC ¶ 70.  To open that account, Plaintiff had to agree to Facebook's terms of use, which are currently referred to as the "Statement of Rights and Responsibilities" ("SRR").  Duffey Decl., ¶ 3.  Plaintiff does not deny accepting the SRR before creating the "4802212800" account.  To the contrary, the SRR is a centerpiece of his case.  *E.g.*, FAC ¶¶ 35, 73–74.

Among other things, Plaintiff's acceptance of the SRR granted Facebook "a non-exclusive, transferable, sub-licensable, royalty-free, worldwide license to use any IP content" that he "ma[d]e available by using Facebook."  Duffey Decl., Exh. A §§ 2(1), 17(6).  Plaintiff also accepted a provision stating that "[b]y using or accessing Facebook Services, you agree that we can collect and use such content and information in accordance with the Data Policy as amended from time to time."  *Id.* at 3–4.  The phrase "Data Policy" contains a hyperlink to that Policy, which states that Facebook "collect[s] the content and other information you provide when you use our services, including when you sign up for an account, create or share, and message or communicate with others."  *Id.* Exh. B ("What kinds of information do we collect?").

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

### B. The suspension of Plaintiff's Facebook account.

Plaintiff accuses each corporate defendant of "surveilling and censoring" him pursuant to its terms of service. FAC ¶ 35. In a portion of the FAC targeting Facebook specifically, Plaintiff claims that he communicated with other users who were members of the "alt-right" and "express[ed] derogatory opinions about Facebook." *Id.* ¶¶ 110–11. A "surveillance system"— which Plaintiff does not describe—allegedly detected this speech. *Id.* ¶ 112. And as a result, Plaintiff claims, his "personal Facebook account '4802212800' was banned from Facebook." *Id.* ¶ 70.

This assertion of a speech-based ban, however, is belied by Plaintiff's own filings. Plaintiff concedes that when Facebook suspended access to the "4802212800" account, it informed him that it had acted out of identity-protection concerns and asked him to confirm his identity. *Id.* ¶¶ 47(b), 113. That request—shown in an exhibit attached to Plaintiff's application for a temporary restraining order—asked that Plaintiff take only "a few steps to confirm [his] identity." *See* Pl.'s Application for Temporary Restraining Order, Exh. 2 [ECF No. 7]. Plaintiff does not allege that Facebook failed to restore access after he confirmed his identity. Indeed, he does not even allege ***trying*** to confirm it. As a result, his claim that Facebook detected derogatory speech and "banned" his account in response is pure speculation.

### C. This litigation.

Claiming to be the victim of a vast conspiracy, Plaintiff has sued Facebook, other online service providers, and individual John Doe users of some of these services. Plaintiff at first accused Facebook and most other Defendants of violating his constitutional rights, California's "Yelp Law," and the federal Consumer Review Fairness Act. He also applied *ex parte* for a temporary restraining order based on his constitutional claims. The Court promptly denied that application, holding that Plaintiff had not "demonstrated any likelihood of success on the merits, or even serious questions going to the merits of his claims." Order Denying Application for Temporary Restraining Order and Order to Show Cause ("TRO Order") at 1:20-21 [ECF No. 14]. Shortly after, Defendants moved to dismiss all claims.

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

1186664

In response, Plaintiff filed the FAC.  In key respects, the FAC does not materially differ from its predecessor.  Plaintiff has re-alleged previously asserted claims with virtually no changes.  Further, while he has added assertions that Facebook's identity-theft concerns were a "scam," he still fails to allege that he ever tried to restore access to the "4802212800" account.

In other respects, however, the FAC dramatically expands the scope of the litigation. Plaintiff has added six new counts, accusing most Defendants of wiretapping, eavesdropping, and computer hacking, and accusing Facebook and Defendant Paypal, Inc., of fraud.

## III.   ARGUMENT

### A.   Plaintiff fails to state a cognizable claim against Facebook.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  In evaluating the complaint's sufficiency, the Court disregards allegations that are "no more than conclusions," as well as "[t]hreadbare recitals of the elements."  *Iqbal*, 556 U.S. at 678–79.

Moreover, the Court "need not accept as true . . . allegations that contradict facts that may be judicially noticed."  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  This includes the contents of materials on which Plaintiff's claims depend, but which he has failed to attach to the FAC.  *Knievel v. ESPN*, 393 F.3d 1068, 1077–78 (9th Cir. 2005).  Accordingly, the Court may consider the SRR and the Data Policy it incorporates, as well as Facebook's offer to restore access to Plaintiff's account if he confirmed his identity.  *See, e.g.*, FAC ¶¶ 73–74 (alleging that Facebook used SRR to justify suspension of Plaintiff's account); *id.* ¶¶ 47(b), 113 (alleging that Facebook asked Plaintiff to confirm his identity before restoring access to the "4802212800" account).

Under these standards, the FAC fails.  All the defects that plagued Plaintiff's original claims are still here.  To start, Plaintiff has ***still*** not plausibly alleged that Facebook intercepted

private communications or suspended his account in response to them.  As his own filings show, Facebook told Plaintiff it had identity-protection concerns and offered to restore access to his account if he confirmed his identity—something Plaintiff apparently refuses to do.  As a result, his case never gets past the starting line: Plaintiff cannot plausibly claim that Facebook has "banned" his account in response to communications it detected when *he* is the one preventing access to the account.

Plaintiff also cannot repair his constitutional and consumer-protection claims.  As the Court has already recognized, Plaintiff offers no basis for treating Defendants as state actors under the Constitution.  The consumer-protection claims, by contrast, fail because Facebook is a free service.  And, in any case, Facebook has immunity under the Communications Decency Act for the act that supposedly violated those statutes: suspending Plaintiff's Facebook account.

Plaintiff spends more effort tacking on new claims, but each one fails for multiple reasons.  Plaintiff's wiretapping claims fail because, among other things, Plaintiff has not alleged any interception of his electronic messages, and because he consented to any alleged interception.  Plaintiff's eavesdropping claim fails because he has no expectation of confidentiality in his communications with other Facebook users.  Plaintiff's computer-hacking claims fail because they find no support in his own allegations or the statute he cites and because he fails to plausibly allege that Facebook did anything without permission.  And Plaintiff's fraud claims fail because he relies on criminal statutes that do not provide a civil remedy, and because he cannot show that Facebook defrauded him of anything.

In the end, Plaintiff kicks up a great deal of dust, but cannot hide that he has no claim against Facebook.  He has had ample opportunity to plead one.  The Court should dismiss the case against Facebook with prejudice.

### 1. Plaintiffs' claims against Facebook—under any theory—fail because he has failed to allege either censorship or surveillance.

The fact that Plaintiff accuses so many private entities of a coordinated personal attack is enough to raise eyebrows.  But at least as to Facebook, Plaintiff's filings show that any alleged persecution is non-existent and any alleged injury is self-inflicted.

5

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

1186664

The FAC offers just one basis for inferring that Facebook monitored Plaintiff's communications with members of the alt-right and tried to punish him for them: the claim that Facebook "banned" his account.  FAC ¶¶ 70–71.  But Plaintiff's own court filings show that Facebook did not ban his account at all, much less do so for political reasons.  Rather, Facebook suspended the account out of identity-protection concerns, offering to restore access if Plaintiff simply confirmed his identity.  *See* Pl.'s Application for Temporary Restraining Order, Exh. 2 [ECF No. 7]; FAC ¶ 47(b).  That offer cannot be squared with Plaintiff's claim that Facebook picked up his derogatory speech and, as punishment, sought to exclude him from Facebook.

To be sure, Plaintiff labels Facebook's stated reason for suspending access to his account a pretext.  FAC ¶¶ 47, 113.  But that withers in the face of Facebook's offer to restore access.  If Plaintiff at least tried to take Facebook up on that offer and was still denied access, he might be on to something.  But he apparently refuses.

That is, of course, Plaintiff's right.  But because he is the sole obstacle to reactivating his account, he can only speculate that Facebook acted unlawfully.  Because a plausible claim for relief "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, all of Plaintiff's claims against Facebook should be dismissed.

> **2.**   **Because all Defendants are private parties, Plaintiff has no claim for violation of his constitutional rights or conspiracy to deprive him of those rights.**

Counts Two and Three of the FAC reallege claims that Defendants violated Plaintiff's constitutional rights and conspired with each other in those violations.  FAC ¶¶ 119–39; *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 390 (1971); 42 U.S.C. § 1985(3).[1]  But Facebook and the other Defendants are all private parties.  FAC ¶¶ 17–27.  For that reason, courts have not hesitated to dismiss similar constitutional claims against them.  *See, e.g.*, *Young v. Facebook, Inc.*, No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304, at *2-3 (N.D. Cal.

---

[1] Plaintiff cites 42 U.S.C. § 1983 as the basis for his direct constitutional claims.  But because his theory of state action points to the federal government, he could only seek a constitutional remedy through a *Bivens* action.  *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987).

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

1  Oct. 25, 2010); *Forbes v. Facebook, Inc.*, No. 16 CV 404 (AMD), 2016 WL 676396, at *2

2  (E.D.N.Y. Feb. 18, 2016).[2]

3       This case is no different.  To plead state action, Plaintiff must allege "there is a

4  sufficiently close nexus between the State and the challenged action of the regulated entity so that

5  the action of the latter may be fairly treated as that of the State itself."  *Jackson v. Metro. Edison*

6  *Co.*, 419 U.S. 345, 351 (1974).  None of his allegations pass muster.

7       As in his original Complaint, Plaintiff claims that the Internet is "regulated and controlled

8  by the federal government."  FAC ¶ 37(b).  But "[t]he mere fact that a business is subject to state

9  regulation does not by itself convert its action into that of the State."  *Jackson*, 419 U.S. at 350.

10  Plaintiff also repeats earlier claims that "[t]he Internet was created and financed by the federal

11  government," "[n]o corporate defendant herein could exist without the Internet or the federal

12  government," and "all corporate defendants are totally dependent on the federal government."

13  FAC ¶ 37(a), (c), (f).  But—as the Court has already held—"[e]ven assuming the accuracy of this

14  description of the government's activity with respect to the internet, plaintiff has not articulated a

15  theory of encouragement or coercion sufficient to show state action because he has neither argued

16  nor alleged that the government encouraged or coerced defendants to take the challenged

17  actions."  *See* TRO Order at 3:15-19 (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

18  "Moreover, even if plaintiff could show such coercion or encouragement, he has not made clear

19  why an action would lie against defendants, as opposed to the relevant state actor—the United

20  States."  *Id.* at 3:23-25 (citing *Blum*, 457 U.S. at 1004).

21       The FAC's only additions on state action are allegations that "[t]he federal government

22  has complete control over the Internet and each of these defendants' databases and business

23  operations" and "[e]ach defendant has integrated the federal government into day-to-day

24  operations of the defendant's business."  FAC ¶ 37(d), (e).  Plaintiff offers no factual support for

25

26  [2] *See also, e.g.*, *Pagan v. Google Corp.*, No. 16-CV-401-JD, 2016 WL 7187645, at *2 (D.N.H.
   Nov. 15, 2016) (recommending dismissal of constitutional claims against Google), *report and*

27  *recommendation adopted*, No. 16-CV-401-JD, 2016 WL 7187312 (D.N.H. Dec. 8, 2016);
   *Waterhouse v. CUFI Church Ass'n Inc.*, No. 14-00144 SOM-KSC, 2014 WL 2938396, at *4

28  (D. Haw. June 27, 2014) (dismissing § 1985(3) conspiracy claim against Twitter).

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

these incredible assertions.  He certainly has not "nudged [them] across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  And in any case, they also fail to show that the federal government coerced or encouraged any specific act or why Plaintiff can sue Defendants instead of the federal government.  *See* TRO Order at 3:15-25.[3]

Plaintiff cannot allege any Defendant violated his constitutional rights or, by extension, that they conspired among each other to deprive him of his constitutional rights.  The constitutional claims fail as a matter of law.

> **3.**   **The Consumer Review Fairness Act and Yelp Law do not apply to the suspension of Facebook's account, and the Communications Decency Act immunizes Facebook for that suspension.**

Count One repeats Plaintiff's claims that the suspension of his Facebook account violates the federal Consumer Review Fairness Act ("CRFA") and California's "Yelp Law."  FAC ¶¶ 109–18.  But neither statute applies to free online services like Facebook, and the CRFA does not even afford a private right of action.  Moreover, even if these statutes could apply here, the Communications Decency Act ("CDA") immunizes Facebook against claims based on its screening content from its platform.

> **a.**   **The "Yelp Law" does not apply to Facebook because use of its platform does not involve a sale or lease.**

The Yelp Law provides in relevant part:

(1) A contract or proposed contract for the sale or lease of consumer goods or services may not include a provision waiving the consumer's right to make any statement regarding the seller or lessor or its employees or agents, or concerning the goods or services.

(2) It shall be unlawful to threaten or to seek to enforce a provision made unlawful under this section, or to otherwise penalize a consumer for making any statement protected under this section.

---

[3] The Court's TRO Order addresses other theories of state action asserted in Plaintiff's temporary restraining order papers but not pleaded in the FAC.  Should Plaintiff try to renew those arguments in opposition to this motion, the Court should reject them for the reasons it has already given.

8

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

1186664

Cal. Civ. Code § 1670.8(a).[4]  As Facebook explained in its previous motion, this language does not apply to Facebook because Plaintiff cannot point to a contract for a "sale or lease."

Although the Yelp law does not define "sale or lease," courts have confronted that phrase in a similarly-worded consumer-protection statute and held it does not apply to Facebook or other free-to-use online services.[5]  In *In re Facebook Privacy Litigation*, the plaintiffs attempted to sue Facebook under the Consumer Legal Remedies Act ("CLRA").  791 F. Supp. 2d 705, 717 (N.D. Cal. 2011).  Like the Yelp Law, the CLRA applies to transactions involving a "sale or lease." Cal. Civ. Code § 1770(a).  To plead that element, the *Facebook Privacy* plaintiffs alleged that personal information they shared with Facebook constituted a "form of 'payment.'"  791 F. Supp. 2d at 717.  The Court flatly rejected that analogy as "unsupported by law" and dismissed the claim with prejudice.  *Id.*  Likewise, in *Claridge v. RockYou, Inc.*, this Court rejected the assertion that a plaintiff "purchase[d] or lease[d]" an online service by handing over personal information. 785 F. Supp. 2d 855, 864 (N.D. Cal. 2011).  The statutory language, the Court held, required a "tangible form of payment."  *Id.*; *see also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 152–53 (3d Cir. 2015).

This case should be no different.  The Yelp Law applies to the same sorts of transactions—"sale[s]" and "lease[s]"—as the CLRA.  *See* Cal. Civ. Code § 1670.8(a)(1).  And as Facebook already pointed out, Plaintiff spent nothing to set up his account.  Duffey Decl. ¶ 2 & Exh. A.

> **b.    The Consumer Review Fairness Act does not apply to Facebook for the same reason as the Yelp Law and, in any event, does not allow a private right of action.**

Count One of the FAC also claims that the alleged suspension violates the Consumer Review Fairness Act ("CRFA").  Yet again, Plaintiff ignores fatal flaws that Facebook pointed out before.  ***First***, the CRFA, like the Yelp Law, cannot apply here because it requires a

---

[4] Like the complaint, the FAC cites California Civil Code §§ 1790-1795.8 as the Yelp Law. These provisions, however, correspond to California's Song-Beverly Consumer Warranty Act.

[5] *See Am. Airlines, Inc. v. Cty. of San Mateo*, 12 Cal. 4th 1110, 1129 (1996) ("A statute that is modeled on another, and that shares the same legislative purpose is in pari materia with the other, and should be interpreted consistently to effectuate [legislative] intent.").

9

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

1186664

transaction involving "selling or leasing."  15 U.S.C. § 45b(a)(3)(A)(i).  **Second**, the CRFA does not create a private right of action.  *See id.* § 45b(d)–(e) (authorizing enforcement by Federal Trade Commission, state attorneys general, and other state consumer-protection officers).

>   **c.**     **The Yelp Law and Consumer Review Fairness Act claims are also barred by the Communications Decency Act.**

Even if Plaintiff could shoehorn his allegations into the text of the CRFA and Yelp Law, he cannot get them past the CDA.  Congress enacted the CDA to foster the development of the Internet by, among other things, shielding service providers from lawsuits arising out of their efforts to screen user-generated content.  Section 230(c) of the CDA reflects two fundamental policy goals: "to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material."  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003).  To realize these goals, courts "have treated § 230(c) immunity as quite robust."  *Id.* at 1123.  Indeed, courts apply § 230(c) broadly "to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles."  *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc).

Two provisions of the CDA govern here: (1) § 230(c)(1), which shields interactive computer service providers when they exercise their traditional publisher functions; and (2) § 230(c)(2), which shields providers when they remove objectionable content from their platforms.  Under both provisions, Plaintiff's claims against Facebook must be dismissed.

>   **i.**     **Plaintiff's claims are barred under § 230(c)(1) because they seek to hold Facebook liable for exercising its traditional role as a publisher.**

Section 230(c)(1) states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  Facebook is undoubtedly a "provider" of "interactive computer service[s]."  The CDA broadly defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  Multiple courts—including this

10

Court—have recognized that Facebook meets this definition. *See, e.g.*, *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015). Indeed, Plaintiff's own allegations demonstrate that Facebook "gives subscribers access to a common server for purposes of social networking" and thus qualifies as an interactive computer service provider. *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015); *see* FAC ¶ 110.

Plaintiff's allegations also establish that the statements relevant to this lawsuit come from "another information content provider," which is defined as "any person or entity that is responsible, in whole or in part, for the creation or development" of the statements at issue. 47 U.S.C. § 230(f)(3). Here, the relevant statements were all created by Plaintiff himself, not Facebook or any other Defendant. *See Sikhs for Justice*, 144 F. Supp. 3d at 1093–94 (plaintiff can be "another information content provider" for purposes of § 230(c)(1) immunity); *see* FAC ¶ 111.

Finally, Plaintiff's theory seeks to hold Facebook liable for exercising its publisher functions. In assessing this element, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). Here, Plaintiff complains that his account was "banned" in response to his online communications with alt-right groups. FAC ¶¶ 70–71. Such "decisions relating to the monitoring, screening, and deletion of content" are "actions quintessentially related to a publisher's role." *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003); *Barnes*, 570 F.3d at 1103 ("[R]emoving content is something publishers do.").

When faced with similar allegations, courts have readily held interactive computer service providers immune under § 230(c)(1). In *Riggs v. MySpace, Inc.*, for example, the court affirmed dismissal of claims related to the deletion of a user profile, finding such activity protected by § 230(c)(1). 444 F. App'x 986, 987 (9th Cir. 2011). Likewise, in *Sikhs for Justice*, this Court held that § 230(c)(1) barred claims over Facebook's decision to completely block a nongovernmental organization's page from appearing in India. That decision was "something publishers do, and to impose liability on the basis of such conduct necessarily involves treating

11
DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

1186664

the liable party as a publisher."  144 F. Supp. 3d at 1095.  Plaintiff seeks to do the exact same thing here: impose liability on Facebook for choosing what content does and does not appear on its platform.  This he cannot do.

ii.     **Plaintiff's claims are also barred by § 230(c)(2)(A), which shields Facebook for efforts to restrict access to material deemed objectionable.**

The CDA contains yet another provision that immunizes Facebook from all liability in this case.  Specifically, § 230(c)(2)(A) shields a provider of interactive computer services—which Facebook is—for "[a]ny action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected."  47 U.S.C. § 230(c)(2)(A).  This broad grant of immunity easily covers Plaintiff's conclusory allegations that Facebook has suspended his account.

Multiple courts have held that the determination of whether certain material is "objectionable" under § 230(c)(2)(A) is determined subjectively by the interactive computer service provider.  *e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 608 (N.D. Ill. 2008); *Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*, No. 09-4567, 2011 WL 900096, at *5–6 (D.N.J. Mar. 15, 2011).  To the extent Plaintiff argues that Facebook failed to exercise this judgment in "good faith," that attack is misguided and futile.  The "good faith" requirement requires Plaintiff to plead "an absence of good faith."  *See, e.g.*, *e360 Insight*, 546 F. Supp. 2d at 609 (emphasis added); *Holomaxx Techs. v. Yahoo!, Inc.*, No. CV-10-4926, 2011 WL 865794, at *5 (N.D. Cal. Mar. 11, 2011).  He has not done so.

As noted, Plaintiff's allegation of censorship is simply a bare accusation that Facebook selectively enforced its terms of service against him and not others.  FAC ¶ 39.  That does not suffice.  In *e360Insight*, for example, the plaintiff failed to plead "the absence of good faith" because the complaint merely asserted that the defendant treated other companies differently than it treated the plaintiff.  546 F. Supp. 2d at 609.  Likewise, in *Holomaxx Technologies*, the plaintiff failed to allege a lack of good faith, even though it pleaded that the defendant had acted in "bad faith" by using faulty filtering techniques that purportedly blocked the plaintiff's emails based on

12

1  profit motivations.  2011 WL 865794, at *5.  The plaintiff offered "no factual support for these

2  allegations."  *Id.*  So too here: Plaintiff offers only speculation that Facebook has singled him out.

3  Section 230(c)(2)(A) applies and immunizes Facebook from liability over the suspension of

4  Plaintiff's account.

5  **4.    Plaintiff's Wiretap Act claims fail for multiple reasons.**

6  Counts Five and Seven of the claims allege claims under the federal Wiretap Act.[6]

7  Plaintiff bases these claims on the allegation that Facebook "intercepted, stored, used, and

8  disseminated to other defendants and unknown third parties" information he transmitted through

9  Facebook's messaging service.  FAC ¶¶ 150, 170.  The claims fail on several levels.

10  **a.    Plaintiff has not plausibly alleged an interception.**

11  The Wiretap Act provides for civil penalties against any person who "intercepts,

12  endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any

13  wire, oral, or electronic communication."  18 U.S.C. § 2511(1)(a).  It also provides penalties for

14  disclosure or use of such communications, but only when the discloser or user "know[s] or ha[s]

15  reason to know that the information was obtained through the interception of a wire, oral, or

16  electronic communication in violation" of the Act.  *Id.* § 2511(1)(d)–(e).  Put another way, there

17  can be no unlawful use or disclosure without an unlawful interception.

18  Here, Plaintiff has not alleged facts showing ***any*** interception.  For an electronic

19  communication to be "intercepted" under the Wiretap Act, "it must be acquired during

20  transmission, ***not while it is in electronic storage***."  *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d

21  868, 878 (9th Cir. 2002) (emphasis added).  But Plaintiff alleges nothing to suggest this

22  happened.  He simply claims that his messages were detected through an undescribed

23  "surveillance system."  FAC ¶ 112.  This bare assertion, which does not "specif[y] how the

24  alleged interception occurred," is not enough.  *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d

25  1026, 1031 n.1 (N.D. Cal. 2014); *see also Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d

26

27  ――――――――――――――
[6] Plaintiff describes Count Five as a claim under the Electronic Communications Privacy Act
("ECPA").  His claims, however, all arise under a Wiretap Act provision that was amended by

28  ECPA.

13

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

1186664

1  1097, 1106 (N.D. Cal. 2011) (dismissing Wiretap Act against Microsoft that "d[id] not explain

2  how Microsoft 'intercepted' [the plaintiff's] communications").

3          This dearth of detail means Plaintiff has also failed to plead another key aspect of an

4  interception: use of an interception device.  Under the Wiretap Act, "intercept' means the aural or

5  other acquisition of the contents of any wire, electronic, or oral communication through the use of

6  any electronic, mechanical, or other device."  18 U.S.C. § 2510(4).  But the word "device"

7  appears nowhere in the FAC.  Again, Plaintiff's vague reference to a "surveillance system" is

8  insufficiently to plausibly allege an interception occurred.

9                          **b.      Plaintiff consented to the alleged interception.**

10          Even if Plaintiff had plausibly alleged that Facebook intercepted his messages to other

11  Facebook users, it would not matter because Plaintiff himself consented to such interceptions.

12  Under the Wiretap Act,

13          [i]t shall not be unlawful . . . for a person not acting under color of law to intercept
           a wire, oral, or electronic communication where such person is a party to the
14          communication or where one of the parties to the communication has given prior
           consent to such interception unless such communication is intercepted for the
15          purpose of committing any criminal or tortious act in violation of the Constitution
           or laws of the United States or of any State.
16

17  18 U.S.C. § 2511(2)(d).  Plaintiff gave the necessary consent here.

18          To create his Facebook account, Plaintiff had to accept the SRR, which provides that

19  Facebook can "collect and use such content and information in accordance with the Data Policy

20  as amended from time to time."  Duffey Decl., ¶ 3; *id.* Exh. A at 3–4.  The Data Policy, in turn,

21  informed Plaintiff that Facebook "collect[s] the content and other information you provide when

22  you use our services, including when you sign up for an account, create or share, ***and message or***

23  ***communicate with others***."  *Id.* Exh. B ("What kinds of information do we collect?") (emphasis

24  added).  Plaintiff thus consented to exactly the conduct of which he complains: the collection of

25  the content of his Facebook messages.  As a result, he cannot allege an unlawful interception.  *See*

26

27

28

14

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

1186664

*Mortensen v. Bresnan Commc'n, L.L.C.*, No. CV 10-13-BLG-RFC, 2010 WL 5140454, at *3, 5 (D. Mont. Dec. 13, 2010).[7]

### c. Plaintiff has not alleged any unlawful dissemination or use, and there is no Wiretap Act claim for unlawful storage.

Even if Plaintiff had pleaded an unlawful interception, he has not stated other Wiretap Act claims by alleging that Facebook "stored, used, and disseminated" what it intercepted.  FAC ¶ 150.  The Wiretap Act does not authorize a claim for "storage" of intercepted communications. *See* 18 U.S.C. § 2511(1).  And while it does prohibit unlawful "use[] and disclos[ure]" of intercepted communications, *id.* § 2511(1)(c)–(d), Plaintiff does not allege any use or disclosure. His "[t]hreadbare recital[]" of the Act's language is insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

### d. The Wiretap Act's consent defense does not supply a cause of action.

Under Count Seven, Plaintiff attempts to state a Wiretap Act based on the provision allowing interception with a party's consent.  FAC ¶¶ 166–71.  This provision is a defense to Wiretap Act liability, not a basis for it.  *See* 18 U.S.C. § 2511(2)(d).

### 5. Plaintiff's California Invasion of Privacy Act claims fail for most of the same reasons as his Wiretap Act claims and because the alleged communications were not confidential.

Count Eight alleges claims under §§ 631 and 632 of the California Invasion of Privacy Act ("CIPA").  Cal. Penal Code §§ 631–632; FAC ¶¶ 172–77.  Neither has merit.

---

[7] While Plaintiff claims to have been a Facebook member for around nine years, FAC ¶ 109, he does not claim that any earlier version of the SRR or Data Policy applies to his claims.  Nor could he. *First*, Plaintiff created the specific Facebook account at issue in May 2017.  Duffey Decl., ¶ 4.  As a result, the SRR incorporated by reference into his FAC must be the current version. *Second*, even if the relevant terms of use were those in effect nine years ago, Plaintiff would have agreed that those terms could change and accepted them through continued use of Facebook.  *Id.* ¶ 8; *id.* Exhs. C–F at 1, G § 12, H–P § 13, Q–S § 14, T § 13; *see also Facebook, Inc. v. Profile Tech., Ltd*, No. 5:13-CV-00459-PSG, 2013 WL 3815886, at *3 (N.D. Cal. July 22, 2013) (finding Facebook had plausibly alleged that defendants were bound by current version of SRR and Developer Policy when "they agreed that the conditions of those agreements could change and that if they did not wish to be bound by the changes, their remedy was to stop using the site and accessing the Platform").

1186664

1    Plaintiff claims that Facebook violated § 631 by "recording . . . all electronic

2  communications of the plaintiff and class members."  FAC ¶ 175.  Section 631, however, says

3  nothing about recording.  It **does** prohibit "willfully and without the consent of all parties to the

4  communication, or in any unauthorized manner, read[ing], or attempt[ing] to read, or to learn the

5  contents or meaning of any message, report, or communication while the same is in transit or

6  passing over any wire, line, or cable, or is being sent from, or received at any place within this

7  state."  Cal. Penal Code § 631(a).  But as discussed above, Plaintiff has not alleged how or when

8  Facebook allegedly acquired the contents of his messages, and he consented to the alleged

9  interception by Facebook.[8]

10    To state a claim under CIPA § 632, Plaintiff must allege that Facebook "intentionally and

11  without the consent of all parties to a confidential communication, use[d] an electronic

12  amplifying or recording device to eavesdrop upon or record the confidential communication."

13  Cal. Penal Code § 632(a).  Again, Plaintiff consented to what Facebook allegedly did.  But even if

14  he had not, his communications through Facebook were not "confidential" under § 632 because

15  he had no reasonable expectation that recipients would keep them private.  As this Court has

16  explained, § 632(a) of the CIPA does not apply to email-like services because recipients may

17  "easily transmit . . . communication[s] to anyone else who has access to the internet or print the

18  communications."  *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918,

19  at *23 (N.D. Cal. Sept. 26, 2013).  Accordingly, both of Plaintiff's CIPA claims fail.

20

21

22

23

---

[8] Unlike the Wiretap Act, CIPA requires consent of "all parties" to a communication.  Cal. Penal

24  Code §§ 631(a), 632(a).  But the difference is immaterial for two reasons.  **First**, the other parties
did consent.  Plaintiff alleges that he communicated with other Facebook users, who would all be

25  subject to the same SRR and Data Policy as he.  FAC ¶ 110.  **Second**, Plaintiff does not allege
that the other Facebook users failed to consent, and even if he had, he would have no standing to

26  complain about it.  *See Scharf v. United States Att'y Gen.*, 597 F.2d 1240, 1244 (9th Cir. 1979)
(plaintiff had no legitimate privacy interest in blood tests of third parties and thus no standing to

27  challenge results as unlawfully obtained); *see also United States v. Torres*, 188 F. Supp. 2d 155,
158 (D.P.R. 2002) (defendant lacked standing to challenge consent to search of property owned

28  by third party).

6.      **Plaintiff's claims under the California Comprehensive Computer Data Access and Fraud Act fail for multiple reasons.**

In Count Six, the FAC alleges multiple claims under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA").  Like Plaintiff's Wiretap Act and CIPA claims, the CDAFA allegations suffer multiple defects.

a.      **Plaintiff fails to allege that Facebook did anything without permission.**

"Each subsection" of the CDAFA "incorporates expressly or by reference a requirement that the defendant acted 'without permission.'"  *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1053 (N.D. Cal. 2015); Cal. Penal Code § 502(c); *id.* § 502(b)(10).  "Courts in this district have interpreted 'without permission' to mean 'in a manner that circumvents technical or code based barriers in place to restrict or bar a user's access."  *Opperman*, 87 F. Supp. 3d at 1053 (quoting *Facebook, Inc. v. Power Ventures, Inc.*, 844 F. Supp. 2d 1025, 1036 (N.D. Cal. 2012)).  Plaintiff makes bare claims that Facebook acted "without permission," but does not allege anything to show Facebook circumvented technical or code-based barriers.  FAC ¶¶ 158, 161–64.  Nor could he: the premise of Plaintiff's case is that Facebook accessed communications sent through Facebook's own platform, and "there were clearly no technical barriers blocking [Facebook] from accessing its own website" or other systems.  *Facebook Privacy*, 791 F. Supp. 2d at 716.

b.      **Plaintiff fails to connect his claims to his own allegations and the language of the statute.**

Even ignoring that Plaintiff has alleged any action "without permission," each CDAFA claim fails on its own terms.[9]  Most fail because they have no basis in Plaintiff's allegations.  For example, Plaintiff appears to invoke a CDAFA provision that bars "alter[ing], damag[ing], delet[ing], destroy[ing], or otherwise us[ing] any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or

---

[9] The CDAFA contains 14 subsections, and the FAC does not state which ones are relevant.  *See* Cal. Penal Code § 502(c).  Facebook has done its best to decipher the allegations and match them to specific CDAFA provisions, but Plaintiff's failure to identify the relevant provisions is a ground for dismissal in itself.  *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1098 (N.D. Cal. 2015).

17

extort, or (B) wrongfully control or obtain money, property, or data." Cal. Penal Code § 502(c)(1); *see* FAC ¶¶ 158–60. But Plaintiff nowhere alleges that Facebook actually used information it collected to trick him or obtain anything of value. *See* FAC ¶ 76.

Similarly, Plaintiff claims Facebook took or tampered with data stored on his computer. *Id.* ¶¶ 161, 163. But while the CDAFA contains provisions dealing with taking or damaging data, Cal. Penal Code §§ 502(c)(2), (4), Plaintiff has only accused Facebook of intercepting user-to-user communications. *See* FAC ¶ 110. Nothing in the FAC suggests that Facebook did anything to or with data saved ***on his computer***.

By contrast, Plaintiff's two remaining CDAFA claims ignore not the FAC, but the statute itself. In both claims, Plaintiff alleges that all Defendants have denied or disrupted access to computer services—in other words, he believes the CDAFA makes it a crime for Facebook to terminate his membership in Facebook. *Id.* ¶¶ 162, 164. Nothing in the statute's text supports that proposition. To the contrary, the CDAFA provides that a person may not

> [k]nowingly and without permission disrupt[] or cause[] the disruption of computer services or den[y] or caus[e] the denial of computer services ***to an authorized user*** of a computer, computer system, or computer network.

Cal. Penal Code § 502(c)(5) (emphasis added). Here, if Facebook had in fact banned Plaintiff—which it did not—he would not be an "authorized user" of Facebook. That makes good sense: Facebook should not be forced, under pain of criminal penalty, to keep a Facebook account open.

### 7. Plaintiff's fraud claims fail because the statutes on which he relies do not provide a private right of action and because suspension of his account did not defraud him of anything.

Counts Nine and Ten attack the so-called "ID Verification Scam"—the alleged use of identity-protection concerns as a pretext for deactivating accounts. FAC ¶ 47. This, Plaintiff claims, is a "fraud scheme" that violates the federal wire fraud statute and California's theft statute. FAC ¶¶ 178–95; 18 U.S.C. § 1343; Cal. Penal Code § 484.

Neither of these criminal statutes is actionable. "[C]ourts have consistently found that [the federal] mail and wire fraud statutes do not confer a private right of action." *Hacker v. Hacker*, No. 1:15-cv-01258 JAM MJS, 2015 WL 8780561, at *3 (E.D. Cal. Dec. 15, 2015), *report and recommendation adopted*, No. 1:15-cv-01258-DAD-MSJ, 2016 WL 4254108 (E.D.

18

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

1186664

Cal. Aug. 12, 2016).  Likewise, "California Penal Code section 484 does not contain any language suggesting that civil enforcement is available," nor is there "any authority that a violation of Penal Code section 484 provides a private right of action."  *Windham v. Davies*, No. 1:14-CV-01651-LJO, 2015 WL 461628, at *6 (E.D. Cal. Feb. 3, 2015) (collecting cases).

Moreover, Plaintiff fails to allege that Facebook defrauded him of anything by suspending his account.  Plaintiff claims that by obscuring the real reason for suspending his account, Facebook obtained the monetary value of his Facebook account.  FAC ¶¶ 184, 193.  But when Plaintiff created the account, he granted Facebook "a non-exclusive, transferable, sub-licensable, royalty-free, worldwide license to use any IP content" that Plaintiff "ma[d]e available through Facebook."  Duffey Decl., Exh. A §§ 2(1) 17(6).  As a result, suspending the account would not have yielded Facebook anything more from the account than it already had.

Plaintiff also claims that the suspension of his account defrauded him of his "chose[] in action with respect to account cancellation"—*i.e.*, his legal claims against Facebook arising from the suspension.  FAC ¶¶ 184, 193.  But this makes no sense.  Plaintiff cannot seriously claim that Facebook tricked him into assigning his claims against Facebook *to Facebook*.

### 8.  Dismissal with prejudice is warranted.

The Court may dismiss without leave to amend where amendment would be futile. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).  And if there had been any doubt that amendment was futile, the FAC dispels it.  The FAC does nothing to correct the flaw tainting each and every claim: the fact that Plaintiff can only speculate Facebook did anything wrong.  It offers nothing to suggest the previous constitutional and consumer-protection claims have merit.  And its new claims are simply an attempt to throw everything at the wall and hope something sticks.

Plaintiff has had ample opportunity to state a claim.  He cannot.  This case should end here and now.

### B.  This case cannot proceed as a class action.

Plaintiff has shown that he cannot state valid claim against Facebook.  But in the unlikely event some part of this case evades dismissal, the Court can and should strike Plaintiff's class

19

1186664

1   allegations.  Under Federal Rule of Civil Procedure 12(f), the Court may strike from a pleading

2   "any insufficient defense or any redundant, immaterial, or impertinent and scandalous matter."

3   Fed. R. Civ. P. 12(f).  "Where the complaint demonstrates that a class action cannot be

4   maintained on the facts alleged, a defendant may move to strike class allegations prior to

5   discovery."  *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).  "Courts in this

6   circuit have permitted [a] broad use of Rule 12(f)" to seek "a preemptive determination of

7   whether [an] action qualifies as a class action under Rule 23," even before a motion for class

8   certification.  *Johnson v. Hewlett-Packard Co.*, No. 09-3596, 2010 WL 2680772, at *4 (N.D. Cal.

9   July 6, 2010) (citing *Sanders*, 672 F. Supp. 2d at 988–89).

10          That preemptive determination is appropriate here.  Because Plaintiff is *pro se*, this case

11   does not qualify for class action treatment.  "A litigant appearing in propria persona has no

12   authority to represent anyone other than himself."  *Russell v. United States*, 308 F.2d 78, 79 (9th

13   Cir. 1962).  For this reason, "*[p]ro se* plaintiffs are not adequate class representatives able to

14   fairly represent and adequately protect the interests of the class."  *Horn v. Foulk*, No. C 08-2419

15   SI(PR), 2008 WL 4457683, at *2 (N.D. Cal. Sept. 29, 2008); *see* Fed. R. Civ. P. 23(a)(4).  If any

16   portion of this case goes forward—and none should—Plaintiff's class claims must be stricken.

17   **IV.    CONCLUSION**

18          Facebook respectfully requests that the Court dismiss Plaintiff's claims with prejudice and

19   strike his class allegations.

20   Dated:  September 5, 2017                          KEKER, VAN NEST & PETERS LLP

21

22                                          By:    */s/ Paven Malhotra*

23                                                 PAVEN MALHOTRA
                                                   JAY RAPAPORT

24                                                 Attorneys for Defendant
                                                   FACEBOOK, INC.

25

26

27

28

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:17-cv-03771-RS

1186664