UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY JAY QUIGLEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>YELP, INC., et al.,<br><br>　　　　Defendants. | Case No. 17-cv-03771-RS<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT** |

## I. INTRODUCTION

Plaintiff Rodney Jay Quigley advances numerous claims against several media and technology companies in connection with their alleged attempts to interfere with his online activity. Defendants Yelp, The Walt Disney Company, Twitter, Media Matters for America, Disqus, and Facebook now move to dismiss Quigley's First Amended Complaint ("FAC").[1] For the reasons set forth below, the motions to dismiss are granted and the FAC is dismissed in its entirety.

## II. BACKGROUND

Quigley's various allegations against defendants are as follows:

---

[1] Paypal Holdings is also named as a defendant, although it is not clear—given that it has not yet entered an appearance—whether Paypal has been served. Because the allegations against Paypal are substantially similar in nature to those against Facebook, it may be determined by examining the face of Quigley's complaint whether those claims are pleaded sufficiently.

### A. Media Matters

Quigley claims that Media Matters banned him from its website and surveilled him. Media Matters was allegedly motivated by Quigley's "derogatory political opinions," "references to the Seth Rich murder where [Quigley] laid responsibility for that murder at the feet of the DNC, HRC, Podesta, SEIU and Debra Wasserman-Schultz [aka, the 'Crats']," and insistence that Media Matters is "fake news." FAC ¶¶ 31, 101-104. He also alleges that Media Matters engages in partisan activities, and uses Disqus—the provider of the comment feature on its website—to surveil communications. Quigley seeks $300,000 in statutory damages against Media Matters, and an injunction requiring Media Matters to cease surveilling him and "desist from ejecting" him, an order that the IRS revoke Media Matters' tax-exempt status under Section 501(c)(3) of the Internal Revenue Code and re-determine its tax liability for the past three years, and monetary damages and attorney fees under the Electronic Communications Privacy Act ("Wiretap Act"), California Invasion of Privacy Act ("CIPA"), and California's Computer Data Access and Fraud Act ("CDAFA").

### B. The Walt Disney Company

Quigley asserts that Disney publishes and owns ABC News, which maintains a website. He claims that on April 10, 2017, he was banned from the website because of his user comments in which he called ABC and a reporter "Fake News" and "Fake Journalists" for supposedly inflating the number of "paid liberal protestors" at a congressman's town hall meeting. *Id.* ¶¶ 18, 61-69, 95-98. According to Quigley, ABC called Disqus and "ordered him banished" to promote "'safety' for liberals, eliminate evil alt-right triggering speech and limit ABC's audience to moronic Beta males and their handlers." *Id.* ¶¶ 67, 98.

### C. Disqus

Quigley alleges that Disqus blocked his ability to leave comments on ABC News and Media Matters webpages that used the Disqus Commentary Engine. Quigley claims that this "surveillance" and comment removal/comment blocking constitute violations of his First, Fourth, and Fifth Amendment rights.

### D. Twitter

Quigley asserts that Twitter acted under color of law to violate his constitutional rights and conspired with its users to do so. He seeks an injunction preventing Twitter from surveilling him and "ejecting" him from its platform for any reason, as well as monetary damages and attorney fees for his Wiretap Act, CIPA, and CDAFA claims.

### E. Yelp

Quigley claims that Yelp banned him from its platform in November 2015 "in response to derogatory political opinions that [Quigley] expressed" about Yelp. *Id.* ¶ 31, 52. According to Quigley, Yelp banned him "after some lengthy surreptitious surveillance" because he violated Yelp's Terms of Service by engaging in "commercial activity," namely "mediating Yelp user disputes with businesses that had been given derogatory reviews by Yelp users." *Id.* ¶¶ 52-54, 56. He claims that "within Yelp's messaging system, Yelp's surveillance personnel could see" he was critical of Yelp, and that "Yelp's surveillance employees detected [his] derogatory speech." *Id.* ¶¶ 60(h), 89. He requests statutory damages of $5,000,000 for "500 days of wrongful exclusion from Yelp" and injunctive relief against Yelp for its alleged violations of his constitutional rights, as well as monetary damages and attorney fees for his surveillance and computer intrusion claims.

### F. Facebook

Quigley asserts that he communicated with other Facebook users who were members of the "alt-right" and "express[ed] derogatory opinions about Facebook." *Id.* ¶¶ 110-11. A "surveillance system" allegedly detected this speech, which led to Quigley's personal account "4802212800" being "banned from Facebook." *Id.* ¶¶ 112, 70. According to Quigley, although Facebook informed him that it had acted out of identity-protection concerns and asked him to confirm his identity to unlock his account, he contends that this was an elaborate ruse to defraud him of his Facebook account.

### G. Paypal

Quigley alleges that Paypal "ejected" him because he challenged a $72 charge to his account. He contends that Paypal used the same identity verification "scam" as Facebook to eject

without justification "undesirable" users and to obtain the monetary value of their accounts. He also accuses Paypal of surveilling his account, although not through his electronic communications.

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (citation and internal quotation marks omitted).

## IV. DISCUSSION

### A. Yelp Law Claim (Claim 1)

Quigley argues that Yelp, Media Matters, and the Walt Disney Company violated

California's Yelp Law by banning him from their commenting platforms for "derogatory" speech. The Yelp Law bars merchants and service providers from including non-disparagement clauses in their consumer contracts. In accordance with its purpose, the law applies only to contracts for "the sale or lease of consumer goods or services." Cal. Civ. Code § 1670.8(a)(1). Yelp and Media Matters argue persuasively that Quigley has failed to allege the elements of a Yelp Law claim. First, Quigley has not alleged that Media Matters or Yelp sold or leased him a good or service (both are free services). Second, Quigley has not identified a specific contractual clause that includes a non-disparagement provision. Third, the Yelp Law exempts from liability entities—such as Media Matters and Yelp—that host consumer reviews or statements, and lawfully remove content from their services. *See* Cal. Civ. Code § 1670.8(e) (providing that the statute "shall not be construed to prohibit or limit a person or business that hosts online consumer reviews or comments from removing a statement that is otherwise lawful to remove."). Thus, Quigley's Yelp Law claims against Media Matters, Yelp, and the Walt Disney Company are dismissed.[2]

Quigley alleges that Facebook's suspension of his account for his "derogatory" speech also violates the Yelp Law. Facebook argues that a Facebook account is a free service and courts have held that under similar consumer protection statutes, the term "sale or lease" does not apply to free-to-use online services. *See In re Facebook Privacy Litigation*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011) (rejecting plaintiffs' argument that personal information they shared with Facebook constituted a "form of payment" under the Consumer Legal Remedies Act). Without the existence of a sale or lease, Quigley cannot maintain a Yelp Law claim against Facebook and that claim is dismissed.

**B. Federal Consumer Review Protection and Tax Code Claims (Claims 1 and 4)**

Quigley's Consumer Review Fairness Act ("CRFA") and Tax Code claims fail because these statutes do not provide a private right of action. A private right of action to enforce a federal

---

[2] Because Quigley's Yelp Law claim against Disney is premised on the same theory as his claims against Yelp and Media Matters—namely the removal of his online comments—that claim fails for the same reasons.

statute exists only if created by Congress. "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

Quigley attempts to bring a CRFA claim against Yelp, Media Matters, the Walt Disney Company, and Facebook on the same facts supporting his Yelp Law claim. The CRFA is, however, by its terms enforced only by the Federal Trade Commission or state attorneys general. *See* 15 U.S.C. § 45b(b), (d), (e)(1). Therefore, Quigley's CRFA claim against all defendants is dismissed.

Quigley also brings a claim against Media Matters under 26 U.S.C. § 501(c)(3), alleging that Media Matters is not entitled to nonprofit status because it engages, in his view, in partisan political activities. This claim fails because this statute does not provide for a private right of action. The Internal Revenue Code is administered and enforced by the Secretary of the Treasury "[e]xcept as otherwise expressly provided by law." 26 U.S.C. § 7801(a)(1). No provision of the Code allows a private right of action to challenge determinations made under Section 501(c)(3) or to seek declaratory or injunctive relief under that section. *Ferguson v. Centura Health Corp.*, 358 F. Supp. 2d 1014, 1017 (D. Colo. 2004); *see also Valencia v. Miss. Baptist Med. Ctr., Inc.*, 363 F. Supp. 2d 1014, 1017 (S.D. Miss. 2005). Accordingly, Quigley's Section 501(c)(3) claim against all defendants is dismissed.

**C. Constitutional Claims (Claims 2 and 3)**

Quigley asserts that all defendants except Paypal violated his First, Fourth, and Fifth Amendment rights to free speech, privacy, equal protection, and due process. He also claims that these defendants "worked with other likeminded users on their websites to purge '*wrongthinkers*' [meaning conservatives, of course] from their websites." FAC ¶¶ 133-139. According to Quigley, defendants "used their respective [terms of service] as the legal reason to surveil and censor [him]." FAC ¶ 136.

Quigley's constitutional claims under 42 U.S.C. §§ 1983 and 1985 fail because he cannot show that any of the defendants are state actors. *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("To

state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). As he did in his motion for a temporary restraining order, Quigley advances an unconvincing theory of state action. He asserts that the government created and financed the internet, regulates and controls the Internet, and controls the defendants' databases and business operations. According to Quigley, because each defendant has "integrated the federal government into day-to-day operations of the defendant's business and each defendant appears to permit unfettered unwarranted access to user information including telecommunications," it should be classified as a state actor. FAC ¶ 37. Yet, Quigley has provided no factual basis in the FAC for concluding that the government is integrated into defendants' businesses, controls the operations of the defendants' business operations, or has access to defendants' user information. Even if he could demonstrate such facts, he has not indicated why the United States government, rather than defendants, is not the liable party. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) ("[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.").

Quigley also argues that defendants acted under color of state law because each defendant's terms of service is an "instrument created under and enforced by state law" and each defendant invoked the terms of service to justify violations of his constitutional rights. Again, this theory does not demonstrate a pervasive entanglement between the state and a private actor that constitutes state action. The fact that state contract law governs the terms of service does not transform private parties into alter egos or joint partners of the state. *See Schucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988) ("Invoking state legal procedures does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement."). Because Quigley cannot show that defendants are state actors, his Section 1983 and 1985 claims must be dismissed.

**D. Federal Wiretapping Claims (Claims 5 and 7)**

Quigley accuses all defendants except Paypal of conducting surveillance and wiretapping of his electronic communications, in violation of the Wiretap Act, 18 U.S.C. §§ 2510, 2511(a)-(d). This claim fails because Quigley has not alleged an interception of his communications while "in transit" or the use of an interception "device." An "interception" only occurs if communications are "acquired during transmission, not while [] in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Although the FAC makes vague references to "surveillance systems" and "surveillance personnel", Quigley does not allege with particularity how or when any defendant became aware of his communications. As a result, his complaint cannot support an inference that an "interception" took place. Because Quigley also fails to allege the use of any electronic or mechanical interception "device," *see* 18 U.S.C. § 2510(4), he cannot state a claim under the Wiretap Act. Given that Quigley has not pleaded an unlawful interception of his communications, his claim for unlawful use or disclosure under 18 U.S.C. § 2511(1)(c)-(d) also fails. Accordingly, Quigley's claims under the Wiretap Act (claims 5 and 7) are dismissed.

**E. California Invasion of Privacy Act Claims (Claim 8)**

Quigley's bare allegations of "surreptitious surveillance" against him by "surveillance personnel" are also insufficient to support his state wiretapping or call recording claims. As explained above, Quigley has not alleged facts giving rise to an inference that his communications were intercepted while "in transit" as required under Section 631 of the California Penal Code. *See, e.g., People v. Wilson*, 17 Cal. App. 3d 598, 603 (1971) (holding that Section 631 does not apply where information was obtained after and not "while" it was in transit or passing over a wire). He has also failed to allege that any defendant "intentionally tap[ped] or [made] any unauthorized connection" to any wire, line, cable, or instrument "by means of any machine, instrument, or contrivance." Cal. Penal Code § 631(a). Therefore, Quigley cannot state a claim under Section 631.

Quigley's Section 632 claim also fails because the communications he alleges were intercepted are not "confidential" as required to be actionable under the statute. Cal. Penal Code § 632(a). Quigley's surveillance claims concern the alleged monitoring of his electronic, Internet-

based communications. These types of communications "are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014). In short, because Section 632 is a statute designed to combat illicit recording of telephonic communications, which are not at issue here, the facts as pled do not reflect a claim for relief under Section 632. Therefore, both Quigley's Section 631 and 632 claims for relief are dismissed.

### F. California Computer Intrusion Claims (Claim 6)

Quigley alleges that the conduct of all defendants except Paypal violated the California Computer Data Access and Fraud Act. The CDAFA prohibits knowingly accessing computers, without permission, and deleting and destroying any data, computer, computer systems, or computer networks. *See* Cal. Penal Code § 502(c). Yelp and Media Matters argue that because Quigley has not identified which of the statute's fourteen subsections—describing different types of conduct—is the basis of his claim, dismissal is warranted because defendants cannot be expected to guess which subsection he might be bringing a claim under. *See, e.g., In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1098 (N.D. Cal. 2015) ("Plaintiffs' failure to specify the specific statutory basis for their § 502 action requires dismissal."). In this case, specification is unlikely to help Quigley because the FAC fails to state a claim under any of the subsections, which all require a plaintiff to show access "without permission." Other than his conclusory statement that defendants acted "without permission," Quigley has provided no facts giving rise to an inference that any defendant "circumvent[ed] technical or code based barriers in place to restrict or bar a user's access." *See Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1053-54 (N.D. Cal. 2014), *citing Facebook, Inc. v. Power Ventures, Inc.*, 844 F. Supp. 2d 1025, 1036 (N.D. Cal. 2012) (defining "without permission" under Section 502). Accordingly, Quigley's CDAFA claim (claim 6) is dismissed.

### G. Federal and State Wire Fraud Claims (Claims 9 and 10)

Quigley alleges that Paypal and Facebook devised an "ID Verification Scam" to bar him from their platforms because they viewed him as an "undesirable user." According to Quigley, his

Paypal and Facebook accounts have monetary value and therefore defendants' actions "intended to defraud the plaintiff and class members of both their accounts and their choses in [sic] action with respect to account cancellation." FAC ¶¶ 178-186. Quigley believes that Paypal's and Facebook's actions violated the federal wire fraud statute, 18 U.S.C. § 1343, and California Penal Code § 484.

Facebook argues that these claims should be dismissed, first because neither the federal wire fraud nor California theft statutes provide for a private right of action,[3] and second because Quigley fails to allege that Facebook defrauded him of anything by suspending his account. When Quigley created an account, he granted Facebook "a non-exclusive, non-transferable, sub-licensable, royalty-free, worldwide license to use any IP content" that Quigley made available through Facebook. Duffey Decl., Ex. A §§ 2(1), 17(6). The suspension of Quigley's account did not change that state of affairs. In the alternative, Quigley also appears to argue that Facebook intended to deprive him of his legal claims against Facebook arising from suspension of his account. He has, however, provided no evidence indicating that this is a viable legal theory. Therefore, Quigley's claims against Facebook under the federal wire fraud and California theft statutes are dismissed.[4]

### V. CONCLUSION

For the reasons set forth above, defendants' motions are granted[5] and the FAC is dismissed, with leave to amend.[6] Should Quigley choose to amend his complaint, he must do so

---

[3] *See Hacker v. Hacker*, No. 1:15-cv-01258 JAM MJS, 2015 WL 8780561, at *3 (E.D. Cal. Dec. 15, 2015) (noting that courts have consistently found no private right of action under federal mail and wire fraud statutes); *Windham v. Davies*, No. 1:14-CV-01651-LJO, 2015 WL 461628, at *6 (E.D. Cal. Feb. 3, 2015) (explaining that "California Penal Code section 484 does not contain any language suggesting that civil enforcement is available," nor is there "any authority that a violation of Penal Code section 484 provides a private right of action.").

[4] Although Paypal has not appeared in this case, and is therefore not technically a party to this motion, it is clear from the face of the FAC that Quigley's claims against Paypal also fail—namely because the federal and state criminal statutes under which he sues do not provide for a private right of action.

[5] Because the complaint is dismissed in its entirety, defendants' motions to strike the class claims need not be addressed.

[6] In opposition to defendants' motions to dismiss, Quigley moved to strike portions of defendants'

within 21 days of the date of this order.

**IT IS SO ORDERED**.

Dated: January 22, 2018

_____
RICHARD SEEBORG
United States District Judge

---

moving papers under Federal Rule of Civil Procedure 12(f). Because Quigley is not entitled to strike an opposing party's statements simply because he disagrees with them, his motions to strike are all denied.